UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTERO COLLINS,<br><br>Plaintiff,<br><br>v.<br><br>JOSIAH JOHNSON, et al.,<br><br>Defendants. | Case No. 24-cv-01415-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT REQUEST FOR DECLARATORY JUDGMENT**<br><br>Re: ECF Nos. 37, 45 |

Plaintiff, an inmate at California State Prison – Sacramento, filed this *pro se* action pursuant to 42 U.S.C. § 1983. Now pending before the Court is Defendants' motion for summary judgment, ECF No. 37; and Plaintiff's "motion for a declaratory judgment regarding summary judgment motion of defendant," ECF No. 45. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendants' summary judgment motion, ECF No. 37; and DENIES as moot ECF No. 45.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff has been sentenced to a term of life with the possibility of parole. As of July 5, 2024, his minimum eligible parole date was December 29, 2083. ECF No. 37-1 at 39. During the relevant events, Plaintiff was housed at Pelican Bay State Prison ("PBSP").

**I.    Complaint**

The operative complaint alleges in relevant part that, on October 28, 2023, PBSP correctional officers Johnson, Barragan, Gonzalez, Cantrall, and Orosa beat Plaintiff without justification; defendant Orosa used a carotid arrest on Plaintiff that prevented Plaintiff from

breathing; and defendants Little and Grogan witnessed the beating and the use of the carotid arrest and did nothing to stop it. ECF No. 18 at 5-25. The Court found that these allegations stated a cognizable Eighth Amendment claim for use of excessive force against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa; a cognizable Eighth Amendment failure to protect claim against defendants Little and Grogan; and cognizable state law claims for assault and battery against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa. *See generally* ECF No. 25.

## II.     October 28, 2023 Incident

On October 28, 2023, around 9:40 a.m., Plaintiff informed staff that inmate Davis was having a medical emergency. In response, defendants Johnson, Barragan, Gonzalez, Cantrall, Orosa, Little, and Grogan arrived at the yard. The parties disagree as to what happened next.

*Plaintiff's version of events*. Defendants Johnson and Barragan approached Plaintiff and placed him in handcuffs, despite Plaintiff telling them that he was trying to help. Defendant Johnson told Plaintiff to shut up and that Plaintiff was fucking up the program. Defendant Barragan said that they would give Plaintiff "some hobby shack treatment" so that Plaintiff would know not to fuck up the program. Defendant Barragan tightened the handcuffs and defendants Johnson and Barragan escorted Plaintiff out of the building. Defendants Gonzalez, Cantrall, and Orosa joined as Plaintiff was being escorted down a walkway in one of the outside yards. Plaintiff told defendant Johnson that the handcuffs were too tight. Defendant Johnson responded, "Shut up before we make it worse and beat your ass out there." Plaintiff responded, "Make it worse then." Defendants Johnson and Barragan proceeded to slam Plaintiff's face into the concrete walkway, punching the back and side of his head, kneeing him in the ribs, elbowing him in the lower back, while yelling, "Stop resisting." Defendants Gonzalez, Cantrall, and Orosa joined the assault, using their fists, elbows, and knees to hit Plaintiff in the back, ribs, and legs. Defendant Orosa placed his knee between Plaintiff's jaw and collar bone and used his full body weight to restrict Plaintiff's airway. Plaintiff repeatedly stated that he could not breathe. Defendants Little and Grogan stood by and took no action to stop the assault. As a result of the incident, Plaintiff received multiple cuts, abrasions, and bruises to his head, face, and chin; suffered a lower back injury that required a back brace and physical therapy; had to walk with a cane for a period of

2

1  time; and was diagnosed with severe anxiety and major depression.  ECF No. 18 at 9-11; ECF No.
2  40 at 4.

3  *Defendants' version of events*: When defendants Johnson and Barragan encountered
4  Plaintiff, Plaintiff appeared to be getting in the way of correctional staff responding to inmate
5  Davis's medical emergency.  Plaintiff was being verbally abusive and profane, and was preventing
6  custody staff from attending to inmate Davis.  To assist responding staff, defendants Johnson and
7  Barragan moved Plaintiff out of the immediate area.  Defendant Johnson handcuffed Plaintiff
8  because Plaintiff tensed his arms up when defendant Johnson attempted to escort Plaintiff out of
9  the area.  As defendants Johnson and Barragan escorted Plaintiff on the #2 yard, Plaintiff yelled,
10 cursed, and tensed his arms up.  Plaintiff threatened officers, saying "I'm gonna fuck you up, get
11 these fucking cuffs off me, I'm a Blood, I've fucked up multiple peace officers before."
12 Defendant Johnson ordered Plaintiff multiple times to remain calm, continue walking, and look
13 straight.  At least four times, Plaintiff thrashed his body, bent his back, and tensed up his left arm.
14 Plaintiff then appeared to lunge at defendant Johnson's face and right shoulder with his left
15 shoulder.  In response, defendant Johnson yelled "get down," and forced Plaintiff to the floor
16 using his body weight and physical force.  Plaintiff was face down on the floor and continued to
17 thrash his body and kick his feet.  Defendant Johnson ordered him to stop resisting but Plaintiff
18 continued to thrash and kick.  Defendant Johnson applied downward pressure on Plaintiff to
19 prevent Plaintiff from moving his arms.  Defendant Johnson was unable to see what defendant
20 Barragan or other officers were doing.  Once leg restraints were applied, Plaintiff stopped resisting
21 and defendant Johnson removed himself from the area. ECF No. 37-1 at 6-7.

22 **III.    Related Rules Violation Reports ("RVR") Nos. 7365756, 7367733**

23 Plaintiff was issued two rules violation reports ("RVR") related to the October 28, 2023
24 incident.

25     **A.    RVR No. 7365756**

26 On October 30, 2023, Plaintiff was issued RVR No. 7365756 by defendant Johnson for
27 assaulting a peace officer – defendant Johnson – by means not likely to cause great bodily injury.
28 RVR No. 7365756 alleged that defendant Johnson escorted Plaintiff out of the custody area

3

because Plaintiff was interfering with staff's attempt to provide care to an inmate suffering a medical emergency; during the escort, Plaintiff yelled profanities, cursed and threatened staff, and thrashed his body in an attempt to break free; Plaintiff then lunged with his left shoulder at defendant Johnson's face and right shoulder; defendant Johnson yelled at Plaintiff to get down; Plaintiff continued with his momentum towards defendant Johnson's face and right shoulder; defendant Johnson utilized his body weight and physical force to force Plaintiff to the ground; Plaintiff continued to resist by thrashing his body and kicking his feet; defendant Johnson applied downward pressure to prevent Plaintiff from harming responding staff; and Plaintiff stopped resisting after leg restraints were applied.  ECF No. 37-1 at 6-14.

On November 16, 2023, Plaintiff was found guilty of this RVR.  In the findings, the SHO found that Plaintiff turned towards defendant Johnson in an effort to break the escort; Plaintiff lunged his shoulder towards defendant Johnson's face; and physical force was used to take Plaintiff to the ground and overcome his resistance.  The SHO also found that video evidence showed Plaintiff yelling in an aggressive manner towards staff, Plaintiff "appearing to turn his shoulder and face in the direction of Officer Johnson," and "Officer Johnson . . . utilizing immediate physical force to redirect [Plaintiff's] body from hitting [Officer Johnson] and force [Plaintiff] to the ground with the other escorting staff."  Plaintiff was assessed a 90-day loss of credits.  ECF No. 37-1 at 16-24.

**B.    RVR No. 7366633**

On November 1, 2023, Plaintiff was issued RVR No. 7367333 by defendant Gonzalez for threatening staff, in violation of 15 Cal. Code Regs. § 3005(d)(1).  RVR No. 7367333 alleged that as defendants Gonzalez and Johnson escorted Plaintiff to the Facility B Hobby Shop, Plaintiff threatened defendant Johnson, "You bitch ass nigga, take these cuffs off and I'll fuck you up;" and threatened defendant Gonzalez, "On [sic] Blood, uncuff me and I'll punch you in the fucking face."  ECF No. 37-1 at 26-27.

On November 16, 2023, Plaintiff was also found guilty this RVR.  The SHO found Plaintiff guilty based on defendant Gonzalez's written testimony, and the staff narratives for the incident authored by officer Houlston and defendant Cantrall.  Plaintiff was assessed a 60-day loss

4

of credits. ECF No. 37-1 at 29-37.

## IV. CDCR Administrative Grievance Process and Plaintiff's Relevant Grievances

### A. CDCR Administrative Grievance Process

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates the following administrative remedy process.

An inmate had the ability to dispute "a policy, decision, action, condition, or omission by the [California Department of Corrections and Rehabilitation] Department or departmental staff that causes some measurable harm to their health, safety, or welfare" by submitting a written grievance. 15 Cal. Code Regs. § 3481(a).[1] To initiate the administrative remedy process for a non-healthcare related issue, an inmate submits his claim for a first level review by filling out and submitting a CDCR Form 602-1 to the Office of Grievances ("OOG") at his prison. 15 Cal. Code Regs. § 3482(a); ECF No. 37-2 at 2. Inmates must submit a claim within sixty calendar days of discovering the claim. 15 Cal. Code Regs. § 3482(b). In the Form 602-1, the inmate is required to "describe all information known and available to the [inmate] regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge." 15 Cal. Code Regs. § 3482(c)(2). In response, the inmate shall receive a written decision from the OOG no later than sixty calendar days after the OOG's receipt of the grievance, clearly explaining the reasoning for the decision as to each claim. *Id.* at §§ 3481(a); 3483(i). If the inmate is dissatisfied with the OOG decision, he may appeal the decision by filing a written appeal with the Office of Appeals ("OOA") within sixty days of discovering the OOG decision. *Id.* at § 3484; ECF No. 37-2 at 2. A final decision by the OOA is required to exhaust an inmate grievance. *Id.* at § 3843(l); ECF No. 37-2 at 2.

When the PBSP OOG receives a grievance, the OOG scans the grievance into a database called the Strategic Offender Management System (SOMS), which generates a unique log number

---

[1] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020, 2022, and 2024. The references in this Order to sections of Title 15 of the California Code of Regulations are to the sections in effect during the relevant events.

1  for each grievance.  ECF No. 37-2 at 2.

**B.      Plaintiff's Relevant Grievances**

According to SOMS, Plaintiff filed two grievances, and a reasonable accommodation request ("RAP") that was construed as a grievance, concerning, or related to, the October 28, 2023 incident:  Grievance No. 481860; Grievance No. 489864; and RAP/Grievance No. 4817341.

**1.      Grievance No. 481860**

Plaintiff identifies Grievance No. 481860 as the grievance that exhausted his administrative remedies for the claims raised in this lawsuit.  ECF No. 18 at 5-6.  Grievance No. 481860, on November 20, 2023, states in its entirety as follows:

> On October 28, 2023, on B-Yard at PBSP, at 9:40 am, while being escorted from 3-Building mini yard, by c/o Josiah Johnson, David Orosa, Chase Cantrall, Efrain Barragan, and Estevan Gonzalez, to the B-Yard hobby shack.
>
> While on the walkway to the hobby shack, I was trying to relay to all c/o's escorting me that the handcuffs were "too tight" and "were cutting into my wrist." I was told by c/o Johnson to "shut up before we make it worst." I then responded, "Make it worst!" I was immediately forcefully slammed on the dirt yard as my feet stayed on the concrete walkway. C/o Johnson began screaming "Stop resisting . . . stop resisting" as all the other c/o's escorting me converged on me. All other c/os's begin to scream also "stop resisting," again and again, as they repeatedly kneed me in my ribs, and slam my head into the dirt. This continued for 60 to 90 seconds, at which time c/o David Orosa mounted me by placing his knee on my neck, using his full weight to cut off my airway. This went on for 90 seconds. I was then cuffed with ankle cuffs, stood up and bought to the hobby shack.
>
> Because of my position on the ground I was only to see c/o Johnson and Orosa, Gonzalez, and Barragan, use excessive force by way of kneeing me in my ribs, back and head. Barragan and Orosa, slammed my face in the ground and placed there (sic) knees on my face and neck. Please let it be noted that I did not resist at no time during this incident. (Please see footage of incident #000000000069014.)
>
> It is my claim that <u>all</u> c/o's named in this 602 violated claimant's civil rights to be free of creul (sic) and unusual punishment and committed excessive force.
>
> I am requesting a thorough investigation by a c/o not below the level of captain, and discipline for any and all staff misconduct regarding the c/o's named and any un-named c/o's attached to this incident. I was injured both physically and mentally in this incident and will be pursuing civil litigation in the highest court for and (sic) amount of $50,000, if not compensate by CDC or the state.

6

> Claimant was wrote a 115 and found guilty of a RVR 11/16/23 related to this incident (see RVR #00000000736756

ECF No. 37-2 at 10-11.

On December 7, 2023, Plaintiff received a first-level response to this grievance, informing him that the grievance had been identified as an allegation of staff misconduct, that the grievance would be reviewed through a separate process, and that a response would be provided to Plaintiff at the end of that process. The response also informed Plaintiff that this first level decision exhausted his administrative remedies related to this claim. ECF No. 37-2 at 14.

Plaintiff states that he was never provided the response regarding the staff misconduct process that was promised in the December 7, 2023 first level response. ECF No. 40 at 6. However, the record shows that, in a memorandum dated June 14, 2024, the CDCR informed Plaintiff of the results of its investigation into the staff misconduct allegations, stating that it determined that the allegations that correctional officers Johnson, Little, Barragan, Cantrall, Orosa, and Gonzalez utilized excessive force during a custody escort and failed to report this use of excessive force were not sustained. ECF No. 37-1 at 45-46.

### 2.     Grievance No. 489864

Grievance No. 489864, submitted on December 7, 2023, alleged that the correctional officer who videotaped the October 28, 2023 incident "abruptly 'and purposely turn[ed] away from the incident,' so as to avoid and/or conceal evidence of excessive force that took place, involving [Plaintiff] and multiple officers," in violation of prison regulations. The grievance alleged that this misleading video footage was used as evidence in RVR No. 7365756. The grievance requested the name of the officer responsible for the video, for the matter to investigated, and for the officer to be reprimanded in accordance with prison regulations. ECF No. 37-2 at 16-17.

The January 8, 2024 first level decision construed Grievance No. 489864 as bringing two claims: (1) whether Plaintiff was afforded due process in the hearing for RVR No. 7365756, in particular with regard to the use of the video evidence; and (2) whether Plaintiff was subjected to excessive force on October 28, 2023. The decision denied the first claim and categorized the second claim as a staff misconduct claim that would be considered outside the prison grievance

process. The decision specified that it exhausted Plaintiff's administrative remedies with respect to the second claim. ECF No. 37-2 at 19-20.

> On January 16, 2024, Plaintiff appealed the first level decision:
> The reviewer misunderstood the basis of my claim. I was not disputing my guilt finding. I wanted to know whether the camera operator at the time of the incident was improperly trained or did he commit misconduct, when he purposely turned the camera to avoid the excessive force and conceal relevant evidence. He (sic) actions was arbitrary and beyond reason. I requested his name and that an investigation take place to find out why claimant was treated different than any other inmate in similar circumstances.

ECF No. 37-2 at 24-25.

A second level, and final, decision was issued on March 20, 2024. The second level decision characterized Grievance No. 489864 as disputing RVR No. 736756. The second level decision denied the claim, finding that there was sufficient information presented and relied upon in the RVR hearing to support Plaintiff's guilt and that the video surveillance system footage "clearly depict[ed Plaintiff] assault[ing] staff." ECF No. 37-2 at 28.

In a memorandum dated June 14, 2024, the CDCR informed Plaintiff of the results of its investigation into the staff misconduct allegations. The CDCR stated that it determined that the allegation that, on October 28, 2023, correctional officers Hopkins, Larson, or Hoven were being dishonest by preventing the capture of video footage evidence in a use of force incident by altering the view of the camera were not sustained. ECF No. 37-1 at 48.

### 3.  Grievance/Reasonable Accommodation Request ("RAP") No. 487341

On December 3, 2023, Plaintiff submitted RAP No. 487341. In RAP No. 487341, Plaintiff stated that, on October 28, 2023, he was slammed on the ground, kneed, and hit, which left him with a bad knee and back injury and limited mobility. Plaintiff stated that it was difficult to walk, take a shower, stand for extended periods of time, and sit on the toilet. Plaintiff requested physical therapy, a back brace, and a cane. ECF No. 37-2 at 30. On December 4, 2023, Plaintiff was issued a cane and a shower chair as an interim accommodation. On December 19, 2023, Plaintiff informed his PCP that he could walk without a cane but had knee pain. The PCP provided pain reliever cream. Based on this meeting, the RAP Panel decided to remove the cane that had been issued as an interim accommodation. On December 20, 2023, Plaintiff was seen by physical therapy, and additional physical therapy sessions were ordered. On December 27, 2023,

facility staff removed the cane and returned it to medical staff, and medical staff advised that the cane was damaged beyond repair and had to be disposed of. The RAP Panel denied Plaintiff's request for a back brace, stating that a back brace was only recommended for stability after a fracture, post operatively, or for spinal cord injuries, none of which applied to Plaintiff. ECF No. 37-2 at 33-35.

On December 29, 2023, RAP No. 487341 was construed as a grievance, with the first-level decision finding that the grievance stated two claims: (1) request for physical therapy, back brace, or a cane; and (2) staff misconduct. The first level decision found that the first claim had been granted per the accommodations described above; and that the second claim would be considered outside the prison grievance process because it alleged staff misconduct. The first-level decision specified that it exhausted Plaintiff's administrative remedies with respect to the second claim. ECF No. 37-2 at 37-39.

On June 16, 2024, Plaintiff appealed this decision, stating that he continued to have extremely bad back pain; that he required help to balance when walking, standing, or sitting on the toilet; and that he only walked without the cane because the doctor asked him to do so. He requested that his cane be replaced, and that he be issued a back brace and prescribed physical therapy. ECF No. 37-2 at 44-47.

On March 20, 2024, Grievance No. 487341 was denied at the second and final level of review, on the grounds that a physician had examined Plaintiff and determined that he did not require a cane or a back brace. ECF No. 37-2 at 51.

## DISCUSSION

Defendants argue that they are entitled to summary judgment because (1) Plaintiff has not exhausted his administrative remedies with respect to his failure-to-protect claims against defendants Little and Grogan; and (2) the excessive force claims are barred by the favorable termination rule set forth in *Heck* and *Edwards*. *See generally* ECF Nos. 37, 41.

**I.  Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

9

law." *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).  The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## II. Exhaustion Claim

### A. Exhaustion Requirement and Legal Standard

The Prison Litigation Reform Act ("PLRA") sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 217–18.

Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal quotation marks omitted). The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Id.* Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id.*

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is

11

something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172. As required by *Jones*, however, the ultimate burden of proof remains with the defendant. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

### B. Analysis

Defendants argue that Plaintiff did not exhaust his administrative remedies for his failure-to-protect claim against defendants Little and Grogan because Grievance No. 481860 did not name either defendant Little or defendant Grogan and did not complain of staff failing to intervene. Defendants further argue that, to the extent that Plaintiff believed Grievance No. 481860 put prison officials on notice of his failure-to-protect claim against defendants Little and Grogan, after receiving the June 14, 2024 memorandum reporting the results of the staff misconduct investigation, Plaintiff was aware that that prison officials had not construed Grievance No. 481860 as grieving defendants Little and Grogan's failure to protect and had not investigated these claims. ECF No. 37 at 16-17.

Plaintiff argues that he satisfied the PLRA's exhaustion requirement for the following two reasons. First, Plaintiff argues that there existed a sufficient connection between Grievance No. 481860 and defendants Little and Grogan such that notice was properly given to prison officials. He argues that he gave notice in Grievance No. 481860 when he (1) described the October 28, 2023 incident in detail; (2) specified that because of his position on the ground, he was unable to see all the officers present; and (3) asked that an investigation be conducted into "all unnamed corrections officers attached to the incident." Second, Plaintiff argues that Grievance No. 481860 was exhausted even though it only received a first level decision because when the first level decision construes the grievance as a staff misconduct allegation, there is only one level of review. ECF No. 40 at 5-6, 10-12.

The Court finds that Plaintiff has not demonstrated a triable issue of fact as to whether he

exhausted administrative remedies against defendants Little and Grogan. As an initial matter, Plaintiff misunderstands Defendants' arguments. Defendants have not argued that Grievance No. 481860 is unexhausted. Rather, Defendants argue that Grievance No. 481860 has only exhausted Plaintiff's excessive force claims against defendants Johnson, Orosa, Cantrall, Barragan, and Gonzalez, but has not exhausted Plaintiff's failure-to-protect claims against defendants Little and Grogan. The Court agrees. It is undisputed that Grievance No. 481860 does not mention defendants Little and Grogan. Nor can Grievance No. 481860 reasonably be read as giving notice of a failure-to-protect claim. Grievance No. 481860 specified that Plaintiff was seeking to hold accountable correctional officers who committed excessive force: "all co/s's named in this 602 violated claimant's right to be free of cruel and unusual punishment and committed excessive force." ECF No. 37-2 at 10-11. Grievance No. 481860 described correctional officers forcing him to the ground, kneeing him, and slamming his head into the dirt. There is no description of officers failing to intervene. Grievance No. 481860's reference to correctional officers "attached to" the October 28, 2023 incident and its request that there be "discipline for any and all staff misconduct regarding the c/o's named and any un-named c/o's attached to this incident" cannot be reasonably read as seeking to hold accountable correctional officials who were not part of the excessive force. Grievance No. 481860 therefore fails to exhaust administrative remedies for Plaintiff's failure-to-protect claim against defendants Little and Grogan. The Court GRANTS summary judgment in favor of defendants Little and Grogan on the failure-to-protect claim, and DISMISSES defendants Little and Grogan from this action without prejudice to Plaintiff re-filing a civil rights action against them after exhausting administrative remedies.

**III.     Applicability of Favorable Termination Rule**

      **A.     Legal Standard**

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that a plaintiff may not bring a Section 1983 action for damages based on "actions whose unlawfulness would render a conviction or sentence invalid" when his conviction or sentence has not yet been reversed, expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486–87. The Supreme Court instructed district courts faced with prisoner Section 1983 suits for damages to "consider whether

13

a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. *Heck* applies to Section 1983 claims that challenge prison disciplinary procedures that result in the prisoner losing good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 644–46 (1997) (holding that *Heck* barred claims alleging procedural defects and bias by hearing officer at disciplinary hearing because claims implied invalidity of credit forfeiture imposed at hearing). But the favorable termination rule of *Heck* does not apply to prison disciplinary sanctions that do not "necessarily" affect the fact or length of a prisoner's confinement. *Ramirez v. Galaza*, 334 F.3d 850, 854-58 (9th Cir. 2003). *Heck* does not bar a California prisoner serving a life sentence with the possibility of parole from bringing a Section 1983 challenge to a disciplinary hearing that resulted in the loss of good time credits because success on the challenge would not necessarily affect the length of the prisoner's confinement. A disciplinary infraction is only one of many factors that the parole board may consider in deciding whether to grant parole. *See Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016) (*Heck* did not bar prisoner from Section 1983 suit alleging that disciplinary proceedings which resulted in loss of thirty postconviction credit day violated due process and seeking expungement of guilty finding; because prisoner was sentenced to life with possibility of parole and parole board authorized to consider various factors in making decision, successful expungement of rules violation guilty finding would not necessarily lead to immediate or speedier release).

**B.     Analysis**

Defendants argue that *Heck* bars Plaintiff's excessive force claim because it is based on his allegation that Plaintiff was neither acting aggressively or resisting when defendants Johnson, Barragan, Cantrall, Orosa, and Gonzalez used force on him; this allegation is contradicted by the disciplinary proceeding which found him guilty of assaulting a peace officer and resulted in a loss of ninety days of credit; and the excessive force claims against Barragan, Cantrall, Orosa, and Gonzalez fall within the temporal scope of the assault on defendant Johnson. ECF No. 37 at 18-21. Defendants further argue that *Heck* also bars Plaintiff's state-law claims for assault and

14

1  battery as Section 1983 created a species of tort liability and there is strong judicial policy against

2  the creation of two conflicting resolutions arising out of the same or identical transaction. *Id.* at

3  21. Finally, Defendants argue that *Heck* bars the failure-to-protect claims because the failure-to-

4  protect claims rely upon the theory that the force used by defendants Johnson, Barragan, Cantrall,

5  Orosa, and Gonzalez was unconstitutional. *Id*.

6  Plaintiff argues that *Heck* does not apply because, similar to *Bealer v. Warden of KVSP,*

7  No. 1:12-CV-01516-AWI, 2015 WL 5519645, at *3 (E.D. Cal. Sept. 16, 2015), *report and*

8  *recommendation adopted sub nom. Bealer v. Brannum*, No. 112-CV-01516 DAD EPG, 2016 WL

9  878873 (E.D. Cal. Mar. 8, 2016), the factual context in which the force was used is disputed.

10 Specifically, Plaintiff alleges that the excessive force "occurred subsequent to the assault on c/o

11 Johnson being completed":

> I do declare that on October 28th, 2023, while in Pelican Bay State Prison, the act of Assault on a Peace Officer was committed by, myself. The act was completed, when I was being escorted, in hand restraints behind my back, as I turned my shoulder and head toward c/o Johnson. This act was done subsequent to me being slammed face first on the walkway, and Excessive Force being committed on me by c/o Johnson, c/o Barragan, c/o Gonzalez, c/o Cantrall, and c/o Orosa.

ECF No. 40 at 5.

The Court finds that Plaintiff's claims against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa for use of excessive force in violation of the Eighth Amendment for state law assault and battery are not barred by *Heck* because success on these claims does not necessarily affect the length of Plaintiff's confinement. The Court makes no determination as to whether success on the excessive force claims and state law assault and battery claims against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa would implicate the validity of the finding that Plaintiff was guilty of assaulting defendant Johnson. Regardless, even if success on these claims invalidated the guilty finding, success would not necessarily lead to speedier release. Plaintiff is serving a life sentence with the possibility of parole and, as of July 5, 2024, had a minimum eligible parole date of December 29, 2083. ECF No. 37-1 at 39. Expungement of the guilty finding would not necessarily lead to a grant of parole, or even an earlier parole date. Under

15

California law, the parole board must consider "[a]ll relevant, reliable information . . . in determining suitability for parole." 15 Cal. Code Regs. § 2281(b). "A rules violation is merely one of the factors shedding light on whether a prisoner 'constitutes a current threat to public safety . . .'" *Nettles*, 830 F.3d at 935 (9th Cir. 2016) (quoting *In re Lawrence*, 44 Cal.4th 1181, 1191 (2008)). A disciplinary infraction does not compel the denial of parole, and the lack of infractions does not compel the grant of parole. *Nettles*, 830 F.3d at 935. Accordingly, *Heck* does not bar Plaintiff's claims of excessive force and state law assault and battery against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa. The Court therefore DENIES Defendants' motion for summary judgment with respect to the excessive force claim and state law assault and battery claims against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows.

1.  The Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment. ECF No. 37. The Court GRANTS summary judgment in favor of defendants Little and Grogan on the failure-to-protect claim. The Court DISMISSES defendants Little and Grogan from this action without prejudice to Plaintiff re-filing a civil rights action against them after exhausting administrative remedies. The Court DENIES Defendants' motion for summary judgment with respect to the excessive force claim and state law assault and battery claims against defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa.

2.  The Court DENIES as moot Plaintiff's request for a declaratory judgment in his favor with respect to Defendants' summary judgment motion. ECF No. 45.

3.  Within ninety (90) days of the date of this order, defendants Johnson, Barragan, Gonzalez, Cantrall, and Orosa shall file their dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served

concurrently with motion for summary judgment).

Plaintiff's opposition to Defendants' motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed. Defendants shall file a reply brief no later than 14 days after the date the opposition is docketed in the Court's electronic filing system. The motion will be deemed submitted on the date the reply brief is due.

Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

This order terminates ECF Nos. 37, 45.

**IT IS SO ORDERED.**

Dated: September 30, 2025

_____
JON S. TIGAR
United States District Judge

17